George Meece, Jr., By Ruth O. Meece, his Next Friend, Appellee, v. Holland Furnace Company, Appellant.

Gen. No. 8,698.

Opinion filed January 16, 1933.

BRACKEN, LIVINGSTON & MURPHY, for appellant.

DANIEL D. TUOHY and MAURICE B. STERN, for appellee.

MR. PRESIDING JUSTICE ELDREDGE delivered the opinion of the court.

George Meece, Jr., appellee, who sues by Ruth O. Meece, his mother and next friend, recovered a judgment in an action on the case in the sum of $4,000 against Holland Furnace Company, appellant.

In the declaration it is charged that the defendant was possessed of a certain automobile which was being driven through its duly authorized agent on the premises known as 1312 West Locust street, Bloomington, Illinois, and that the said George Meece, Jr. was then and there a minor of the age of seven years and was on and about the premises aforesaid; that the defendant through its agent was then and there driving said automobile on and about said premises in a backward direction and did so in such a careless and negligent manner that he ran into and struck the plaintiff with great force and violence; that the defendant, in driving the said car, through its agent, did not ascertain whether anyone was on the premises aforesaid, and the premises was the home of the plaintiff; that it was the defendant's duty to ascertain whether the premises were clear and free of any occupants therein and to use due care and caution; that the defendant did not

regard its duty in that behalf or exercise due care and diligence, but so negligently operated and propelled said motor vehicle that by reason of said negligence said motor vehicle of said defendant ran into and struck the plaintiff who was knocked down and injured, etc. To this declaration the defendant filed four pleas. The first plea was that of the general issue; the second plea denied that defendant was possessed of said automobile; the third plea averred that the automobile was not at said time in the care, charge and management of a servant or agent of the defendant; the fourth plea denied that said automobile was then and there used by any servant or agent of the defendant in and about the course of defendant's business with the knowledge and authority of the defendant. Subsequently an additional special plea was filed which averred that the plaintiff ought not to have or maintain her aforesaid action against the defendant because the said motor vehicle was in the control and management of George Meece, Sr., who is the father of George Meece, Jr. at the time of the alleged injuries, and that the home of said George Meece, Jr. is at 1312 West Locust street, Bloomington, Illinois, and is furnished and maintained by said George Meece, Sr. A demurrer was sustained to this last special plea.

The facts as developed by the evidence prove that the plaintiff George Meece, Jr., was the son of George Meece, Sr., who was driving the car in his own yard at his own home and on his own premises when the accident happened. The evidence further shows that on these premises was a garage used by the father of plaintiff for the purpose of housing his automobile and that the plaintiff was accustomed to play in this garage and kept his toys there which his father well knew, and that while his father was backing the automobile into the garage it struck his son, the plaintiff, broke his leg and otherwise bruised him. The auto-

mobile was owned by the father of plaintiff and was his own private property. The accident happened between 7 and 7:30 o'clock on the evening of July 8, 1931, and the father of plaintiff had come home for the purpose of eating his supper.

The defendant, the Holland Furnace Company, sold and installed furnaces and George Meece, Sr., within a certain territory assigned to him by the Holland Furnace Company, was working under what was termed a heating engineers' contract, a salesman's job. His duty was to go among the people and get them to buy furnaces. He was the sole judge of his hours of work and when and where he worked. He received no salary but a commission on any contract he might procure. He could use an automobile in his work if he so desired. The defendant did not own the automobile which he used nor pay for its upkeep. His means of locomotion in the progress of his work was entirely in his own discretion, and the witness Jones, who was the local manager of the defendant in Bloomington and a witness placed upon the stand for the plaintiff to testify in his behalf, stated positively that none of his expenses in the prosecution of his work were paid by the defendant. His own testimony in regard to this subject is evasive and uncertain. He was asked the following question: ''Q. How were you paid on July 8th? A. I couldn't say. Part of the time we were on drawing accounts and part of the time we were on straight commission.'' It would have been a very simple matter to prove whether he had a drawing account for his expenses with the defendant or not, and in the face of such an answer we must conclude that the testimony of plaintiff's witness Jones, the general manager, that he had no such drawing account and the defendant did not pay any of his expenses in the prosecution of his work is true. He testified that he intended to go to Chenoa that evening after

supper to try and get a contract from a prospect living in that city. The defendant had no control whatever over the plaintiff's father in the prosecution of his work nor the method of locomotion which he might take in the prosecution of such work and was only interested in the results thereof. Under such circumstances he was a subcontractor and not a servant. An independent contractor is one who renders service in the course of his occupation representing the will of the person for whom the work is done, only as to the result of his work and not as to the means by which it is accomplished. *La May v. Industrial Commission,* 292 Ill. 76; *Aldrich v. Tyler Grocery Co.,* 206 Ala. 138; *Pyyny v. Loose-Wiles Biscuit Co.,* 253 Mass. 574; *Howitt v. Hopkins,* 220 N. Y. S. 462; *Dohner v. Winfield Wholesale Grocery Co.,* 116 Kan. 237; *McCraner v. Nunn,* 129 Kan. 802, 284 Pac. 603.

If it be conceded for the sake of argument that the father of plaintiff was an employee of the defendant at the time of the accident and that said accident happened while he was in the discharge of his duties as such employee, the question arises, Has a minor child a cause of action against the employer for injuries received through the negligence of his own father? It is a rule of common law based upon public policy that a minor child cannot sue his father in tort unless a right of action is authorized by statute. 46 C. J. 1324, sec. 159; 20 R. C. L. 631, sec. 36; *Matarese v. Matarese,* 47 R. I. 131, 131 Atl. 198; *Elias v. Collins,* 237 Mich. 175; *Small v. Morrison,* 31 A. L. R. 1135; *Wick v. Wick,* 192 Wis. 260; *Foley v. Foley,* 61 Ill. App. 577. It is also an established rule of law that a servant is liable to his master for damages which the latter has been compelled to pay to third persons because of the negligence of the servant, where the master is not considered at fault. 39 C. J. 1313. Under these circumstances, can the defendant be liable to the plaintiff

upon the ground of *respondeat superior?* In the case of *Hayes v. Chicago Tel. Co.,* 218 Ill. 414, the suit was brought against the City of Chicago and the Chicago Telephone Co. Upon the trial the City of Chicago was found not guilty and the Chicago Telephone Co. was found guilty and damages assessed at $3,500. The evidence disclosed that the negligence which caused the injury, if any, was that of the City of Chicago. The court held: "In the trial below the City of Chicago, which, under appellant's contention, occupied the position of agent, was found not guilty. No appeal was taken from that judgment, and it must be deemed to have settled the fact that the City of Chicago was not liable for the death of appellant's intestate. It necessarily follows that if the agent charged with the commission of the act complained of be not guilty, a judgment could not be recovered against appellee, the principal, upon the ground of *respondeat superior.* The judgment in this case in favor of the City of Chicago is a complete bar to an action against the appellee for its negligence in exercising any permissive rights appellee may have granted it. To make appellee liable upon the theory under discussion, a case must have existed against the city." To the same effect are *Anderson v. West Chicago St. R. Co.,* 200 Ill. 329; *Larson v. Hines,* 220 Ill. App. 594; *Bunyan v. American Glycerin Co.,* 230 Ill. App. 351. In the last case cited the court held: "In this State the law is well settled that where an action on the case is brought against two defendants and one of them is liable only on account of the rule of *respondeat superior* for the negligence of the other, if the latter is found not guilty such finding is a complete bar to the action against the former. *Hayes v. Chicago Tel. Co.,* 218 Ill. 414; *Anderson v. West Chicago St. R. Co.,* 200 Ill. 329; *Antrim v. Legg,* 203 Ill. App. 482; *Larson v. Hines,* 220 Ill. App. 594; *Billstrom v. Triple Tread Tire Co.,* 220 Ill. App. 550.

The weight of authority outside of Illinois seems to be to the same effect. *Doremus v. Root,* 23 Wash. 710, 54 L. R. A. 649; *Hayes v. Chicago Tel. Co.,* 218 Ill. 414, 2 L. R. A. (N. S.) 764; *McGinnis v. Chicago, R. I. & P. Ry. Co.,* 200 Mo. 347, 9 L. R. A. (N. S.) 880; *Southern Ry Co. v. Harbin,* 135 Ga. 122, 30 L. R. A. (N. S.) 404; *Hobbs v. Illinois Cent. R. Co.,* 171 Iowa 624, L. R. A. 1917E 1023.'' This doctrine has been applied to cases where the facts are similar to those in the case at bar. The same principle which supports the rule that a minor child cannot sue its parent in tort applies to the relationship of husband and wife, neither of which can sue the other for a tort in the absence of a statute authorizing such action. In the case of *Riser v. Riser,* 240 Mich. 402, the defendants, Martin L. Riser and his wife, owned an automobile and invited the plaintiff and her husband to ride therein. On the return trip plaintiff's husband drove the automobile and through his negligence ran into a ditch causing injuries to his wife. She sued Martin L. Riser and his wife who were the owners of the car. The court held: ''Plaintiff might not recover in tort damages against her husband for her injuries occasioned by his negligence. See *Harvey v. Harvey,* 239 Mich. 142, where the matter is considered at length. As plaintiff may not recover against her husband, the driver of the car, she cannot recover against the owners, defendants, for whom he drove.'' In the case of *Horgan v. Boston Elevated Railway,* 208 Mass. 287, the plaintiff sued the defendant for damages for false arrest. After he was arrested he voluntarily asked that he be discharged without arraignment. The court, after stating that the law of that State was that if one arrested voluntarily asked to be released without arraignment and his discharge follows, he impliedly waives any claim for damages which otherwise he might have had against the officer, held further: ''If for the reasons stated the plaintiff could not prevail against the officer, or the officer's fel-

low servant, he cannot recover against the defendant.'' In the case of *Alabama G. S. R. Co. v. Ensley Transfer & Supply Co.,* 211 Ala. 298, the court said: ''Obviously, whenever the master, whether a corporation or an individual, is guilty of a tort through the misfeasance or willfully wrongful conduct of a servant, the servant is for the same conduct personally guilty and liable. . . . And, vice versa, when the conduct of the servant does not render him personally liable, it cannot impose liability upon the master under the doctrine of *respondeat superior.''* In the case of *Maine v. Maine & Sons Co.,* 198 Iowa 1278, the plaintiff was injured while riding in an automobile with her husband who was driving the same and by his negligence in so doing. The court held: ''While so much is not conceded by appellant, we may assume, for the purpose of the case, that the evidence showed that, at the time of the accident, Kenneth Maine was engaged in the business of appellant, and was acting within the scope of his employment; that the corporation, through its officers, had consented to appellee's accompanying her husband in the company's car; that the accident and injury to appellee were proximately caused by the negligence of Kenneth Maine in the respects alleged in the petition; and that appellee was not guilty of contributory negligence. That proof of such facts would ordinarily warrant a recovery against the employer is, of course, plain. The fundamental question in the case is whether the fact that the employee for whose negligence the employer would be liable is the husband of the person injured, will defeat her recovery.

''It is, as, of course, it must be, conceded that a wife could not recover at common law against her husband for a tort committed by him against her person. 30 Corpus Juris 714. . . . The common-law freedom of the husband from liability to the wife for a tortious or negligent injury to her person does not rest merely

upon a lack of remedy,—the inability of the one to sue the other. It arises out of the very relationship itself, and the incapacity to sue is but an incident to it. . . . The liability of the employer for the negligent acts of his servant is based upon the familiar doctrine of *respondeat superior*. Unless the servant is liable, there can be no liability on the part of the master. This has been repeatedly held in cases where both were sued and the verdict was against the employer only. . . . Where there is no right of action in the wife for a wrongful or negligent personal injury inflicted upon her by her husband, there can be no liability therefor on his part; and, since there is no liability on his part, we see no escape from the conclusion that his employer cannot be made to respond in damages to her for his negligent act.'' In the case of *Emerson v. Western Seed & Irrigation Co.*, 116 Neb. 180, the plaintiff was injured through the negligent driving by her husband of an automobile that was the property of the defendant and was being operated in the conduct of its business by her husband as an employee and agent of the defendant, who also knew that she was accompanying her husband and consented thereto. The court, after stating the law that a wife cannot sue her husband in tort, held: ''If recovery may be had by the wife against the employer, and he in turn may recover from the husband-employee, then the family wealth remains the same save as diminished by the expenses of the litigation. It would seem that to permit a recovery against the employer results simply in countenancing an encircling movement where a frontal attack upon the husband is inhibited. *Maine v. Maine & Sons Co.*, 198 Ia. 1278.

''Suits between spouses should be confined as heretofore to those having contractual elements or where there is direct statutory authorization, and suits by a spouse against third persons grounded upon the tort

of the other spouse, and without contractual elements, fall in the same category."

The courts of some States apparently hold a contrary doctrine, notably *Schubert v. Schubert Wagon Co.*, 249 N. Y. 253, but the decision in that case appears to rest largely upon the rights of married women under the New York statute. In most States which have passed upon this question, the courts thereof have held that the statutes in their respective States enlarging the rights of married women should be construed as applying only to her contractual rights and should not be invoked as an aid to sustain actions of this character. We deem it unnecessary to discuss this phase of the question for the reason that our attention has not been called to any statute of any State which even attempts to enlarge such rights of minor children. No cause of action exists in favor of the plaintiff against the father in the case at bar and the defendant could not recover against him for the damages caused by his negligence, and under the plain principles of law, if the servant is not liable, then the principal cannot be unless he was directly connected with or directed the actions of the servant and was thereby primarily liable as an active joint tort-feasor. The fact that if such actions are permissible the gates would be open to unlimited fraud should also have its influence.

Also, if the father had been in fact the servant of defendant, the defendant would not be liable unless the father was at the time of the injuries acting within the scope of his employment. In the case of *Clark v. Wisconsin Cent. Ry. Co.*, 261 Ill. 407, the court held: "The fact that Tollinger was employed to work certain hours for defendant did not, of itself, render defendant liable for his every negligent act. When not engaged in his line of employment but in pursuing purposes of his own the master would not be liable for his negligence, even though he was at the time using instrumentalities

furnished him by the master to perform the duties of his employment.'' In support of this doctrine the court cites with approval the rule laid down in Shearman & Redfield on Negligence, ''If the act complained of be committed by the servant while at liberty from the service of the master and while pursuing his own interests exclusively, there can be no question of the master's freedom from liability, even though the injury would not have been committed without the facilities afforded the servant by his relation to the master.'' In *Johanson v. Johnston Printing Co.*, 263 Ill. 236, the rule is announced as follows: ''Outside of the scope of his employment the servant is as much a stranger to his master as any third person, and an act of the servant not done in the execution of services for which he was engaged cannot be regarded as the act of the master. If the servant step aside from his master's business for some purpose wholly disconnected with his employment the relation of master and servant is suspended. The act of the servant during such interval is not to be charged to his master. This doctrine is established by substantially all of the authorities. (*Higgins v. Western Union Telegraph Co.*, 156. N. Y. 75, 50 N. E. Rep. 500; *Standard Oil Co. v. Anderson*, 202 U. S. 215.) The same rule has often been recognized by this court. (*Pawlak v. Smith*, 233 Ill. 401; *Kehoe v. Marshall Field & Co.*, 237 id. 470; *Harding v. St. Louis Nat. Stock Yards*, 242 id. 444.)'' The defendant had no control of appellee's father as to the hours in which he should work, the method he pursued in doing it, when or how he should do it, or the instrumentalities he should use in its performance. The defendant did not own the automobile nor did it require appellee's father to use an automobile in the conduct of the business. The accident happened on the premises owned or possessed by appellee's father which was his home. Appellee's father while he was at home was

not acting or pursuing any duty that he owed to the defendant and the defendant had no control of any kind, direct or implied, over his actions while he was at home on his own premises. The backing of the car into the garage was not an act which was done for the benefit of the defendant but for the protection of the alleged employee's own property with which he could do as he pleased, and his act in driving the car while it was on his own premises into his own garage cannot by any stretch of the imagination, under the circumstances, be held to come within the scope of his employment. If the defendant is to be held liable under the facts in this case, then it would also have been liable if the father had kicked the child and broken his leg, as his own legs were as much an instrumentality in the business in which he was employed as his own automobile.

What we have said disposes of many of the errors assigned in regard to the giving and refusing of instructions; however, some announcing other propositions of law require comment. Instruction No. 2 given at the request of the plaintiff stated that if the jury believed from the evidence that the plaintiff at the time of the accident was a child between the ages of 7 and 14, then the question of his being capable of contributory negligence is an open question of fact and is for the jury to determine, taking into consideration his age, intelligence, capacity and experience. One objection to this instruction made by appellant is that it omits the words "under similar circumstances." It is intimated in the *United Breweries Co. v. O'Donnell,* 221 Ill. 334, that the omission of such words would make the instruction erroneous. Another objection thereto is the fact that there was no evidence whatever in the record as to the age of appellee. Plaintiff's instruction No. 4 is as follows: "The Court instructs the jury that if you find for the plaintiff you will be

required to determine the amount of his damages. In determining the amount of damages plaintiff is entitled to recover in this case, if any, the jury have a right to, and they should, take into consideration all the facts and circumstances as proven by the evidence before them, the nature and extent of plaintiff's physical injuries and resulting from the collision in question, if any, so far as the same are shown from the evidence; his suffering in body and mind, if any, resulting from such physical injuries and such future suffering and loss of health, if any, as the jury may believe from the evidence before them in this case, he has sustained or will sustain by reason of such injuries, disfigurement of his person as a result of his injuries, if any, and may find for him such sums as in the judgment of the jury under the evidence and the instructions of the Court in this case, will be a fair compensation for the injuries he has sustained or will sustain, if any, so far as such damages and injuries, if any, *are claimed or alleged in the declaration.*'' The declaration charged that plaintiff was obligated to pay $500 in and about endeavoring to be healed of his said wounds. And the court, over the objection of the defendant, permitted evidence to be introduced to the effect that the doctor's fees for his services to appellee were $300 and that the hospital charges were $102 and that a nurse was required for about three weeks. In numerous cases it has been held by the Appellate Courts of this State that where a minor child resides in the household of his father, who is entitled to the custody and services of the child, and who is legally accountable for its support and maintenance, the parent having in no way lost his right of recovery of the items of damages accruing to him upon his child being injured, it is error in an action brought by the child for personal injuries to permit proof of the expenses necessarily incurred in curing the injuries as the parent, and not the child, may recover such expenses. *Chicago & Alton R. Co. v. Lammert,* 12 Ill.

App. 408; *Heimsoth v. Anderson,* 16 Ill. App. 151; *Baltimore & O. S. W. Ry. Co. v. Keck,* 89 Ill. App. 72. The inclusion of such items of expenses would not bar the parent from recovering them in a different suit and thus there might be a double recovery. The same principle has been held in an action by a minor for personal injuries where it has been sought to recover damages for loss of ability to labor during minority, in the absence of any evidence from which it can be reasonably inferred that the father had emancipated such minor and relinquished his right to the minor's earnings. *Donk Bros. Coal & Coke Co. v. Retzloff,* 229 Ill. 194; *American Car & Foundry Co. v. Hill,* 226 Ill. 227. The rule is thus stated in 31 C. J. 1114, sec. 252: "Since the parent is entitled to the services and earnings of the child so long as the latter is legally under his custody or control, ordinarily an infant suing for personal injuries cannot recover for the impairment of his earning capacity during infancy, or for loss of time, or for expenses in curing his injuries, when, and only when, he is under the control of his parents." The instruction specifically refers to the damages claimed in the declaration and in view of the fact that the court admitted proof of the expenses mentioned the jury would have every reason to believe that the plaintiff was entitled to recover the father's expenses in attempting to have him cured. The admission of this evidence and the giving of this instruction was error.

The judgment of the circuit court is reversed and this court makes the following findings of fact: (1) we find as a fact from the evidence that George Meece, Sr., at the time the acts of negligence complained of were committed by him was not a servant of defendant; (2) that if such servant, he was not at that time acting within the scope of his employment.

*Reversed with findings of fact.*